UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| GEORGE BURGIN, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Case No. 1:13CV10 ACL |
|  | ) |  |
| BRYON HOSKINS, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## MEMORANDUM AND ORDER

Plaintiff George Burgin, an inmate at the Southeast Correctional Center ("SECC"), brought this action under 42 U.S.C. § 1983 against two defendants employed at SECC in their individual capacities, alleging violations of his constitutional rights. This matter is before the Court on the Motion for Summary Judgment of Defendant Bryon Hoskins. (Doc. 40.) For the following reasons, the Court will deny Defendant's Motion for Summary Judgment.

**I.      Background**

In Count I of his Complaint, Burgin alleges that Defendant Bryan Hoskins, a correctional officer and member of a drug task force at SECC, used excessive force on him without provocation in violation of the Eighth Amendment on September 8, 2010. Burgin claims that Hoskins and the other members of the drug task force engaged in a pattern of unlawful conduct against prisoners at SECC. Burgin further asserts that Jeff Norman, the Superintendent of SECC, was aware of the unlawful conduct by the drug task force officers but failed to take corrective action, assure proper training and supervision, or implement meaningful procedures to discourage the officers from engaging in the unlawful conduct.

In Count II of his Complaint, Burgin alleges "cruel conditions" in violation of the Eighth Amendment against Defendants Hoskins and Norman. Specifically, Burgin contends that

Defendant Hoskins, in falsely claiming that Burgin had swallowed drugs, caused Burgin's placement in a dry cell for nine days. Burgin alleges that Defendant Norman authorized Burgin's placement in the dry cell.

Finally, in Count III, Burgin alleges a state assault and battery claim against Defendant Hoskins arising out of the September 8, 2010 incident.

On February 19, 2014, the Court granted Defendant Norman's Motion for Summary Judgment, finding that Burgin had failed to exhaust his administrative remedies with regard to his claims against Defendant Norman.

On September 30, 2015, Defendant Hoskins filed the instant Motion for Summary Judgment, in which he argues that he is entitled to judgment as a matter of law on Burgin's excessive force claim because Hoskins' conduct at issue was appropriate to the disturbance created by Burgin. Hoskins contends that he is entitled to summary judgment on Burgin's cruel conditions claim because Hoskins had no authority to originate or modify the conditions of Burgin's confinement to the "dry cell." Hoskins further argues that he is entitled to qualified immunity with regard to Counts I and II, and that he is entitled to official immunity on Count III.

## II. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine issue of material fact is not the "mere existence of some

alleged factual dispute between the parties." *State Auto. Ins. Co. v. Lawrence,* 358 F.3d 982, 985 (8th Cir. 2004). "Instead, the dispute must be outcome determinative under prevailing law." *Mosley v. City of Northwoods,* 415 F.3d 908, 910–11 (8th Cir. 2005) (internal quotations omitted). A fact is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in his favor to allow a jury to return a verdict for him. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If 'opposing parties tell two different stories,' the court must review the record, determine which facts are material and genuinely disputed, and then view those facts in a light most favorable to the nonmoving party – as long as those facts are not 'so blatantly contradicted by the record . . . that no reasonable jury could believe' them." *Reed v. City of St. Charles, Mo*., 561 F.3d 788, 790 (8th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights,* 2 F.3d 276, 279 (8th Cir. 1993).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the nonmoving party and give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita,* 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The Court may not "weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249. The court is required, however, to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

**III.    Facts**

The following facts are undisputed:[1]

Burgin is currently serving concurrent sentences for drug trafficking, assault, robbery, and armed criminal action. Since his initial sentencing in 1996, Burgin has been convicted of transporting contraband in prison, as well as unlawful use of a weapon inside a DOC facility. In approximately 2006, Hoskins investigated Burgin's stabbing of another inmate. In 2006 or 2007, Hoskins uncovered a package of marijuana that Burgin was keeping in his groin area.

On September 8, 2010, Hoskins was assigned to the search team at SECC. The search team's mission was to locate and confiscate dangerous contraband in the possession of offenders housed at SECC. On September 8, 2010, there were five members of the search team. In addition to Hoskins, they were: Officers Spencer, Landers, Magill, and Arnold. The search team was observing the recreation area, where offenders from different housing units convene, looking for transfers of contraband between offenders.

What happened next is disputed by the parties. Hoskins states that he observed Burgin approach another inmate, Offender Belford. Burgin received a small plastic-wrapped bundle from Belford. Upon receiving the bundle, Burgin conducted a "celebratory dance," and then tucked the bundle into his sock. Believing that Burgin had received contraband from Belford, Hoskins, along with Officers Spencer and Landers, approached Burgin in the recreational area and asked him to step into the restroom to be searched. The search team selected the restroom specifically because strip searches should be conducted in discreet areas. During the course of

---

[1]The undisputed facts are taken from facts that (1) Plaintiff admitted were undisputed in his response or (2) Plaintiff alleged were disputed but failed to properly and/or directly controvert. The movant's statement of facts are deemed admitted if not specifically controverted by the party opposing the motion with specific references to portions of the record as required by Local Rule 4.01(E) and Federal Rule of Civil Procedure 56(c)(1).

4

the search, Burgin removed an item from his sock and began to swallow it. Hoskins ordered Burgin to stop swallowing the item. When Burgin did not comply, Hoskins sprayed Burgin in the face with pepper spray. Hoskins and another officer placed Burgin on the ground and handcuffed him.

Burgin's version of the events differs. Burgin denies that he possessed contraband on September 8, 2010, and notes that no contraband was ever found on his person. Burgin contends that he was asked to step into the restroom to be searched when he was in the recreation yard. He believes that the bathroom was chosen for the confrontation by Hoskins because it lacked a view from video cameras. Burgin contends that when he entered the restroom with Hoskins, Hoskins harassed him about being a drug dealer. Hoskins then sat on Burgin's chest, punched him in the eye, and choked him with both hands. When Burgin continued to yell out for help, Hoskins sprayed pepper spray inside Burgin's mouth. Other staff members heard the commotion and then responded to the restroom. When those staff members asked what had happened, Hoskins claimed that Burgin had swallowed drugs. Burgin states that he was then taken to the infirmary where his stomach was x-rayed and no drugs were identified on the x-ray.

The parties agree that, following the bathroom incident, Burgin was taken to a cell in administrative segregation known as the "dry cell." Burgin was videotaped being "stripped out," or removing all of his clothing and putting on restraints upon entering the dry cell. No injuries are visible on Burgin in this video; although Burgin contends that the quality of the video and lighting may have played a role in not seeing visible injuries. Burgin was seen by a nurse upon being placed in the dry cell. The nurse allowed Burgin to wash his face. The nurse did not note any injuries. Burgin was released from the dry cell after ten days. Hoskins was not involved in

5

the decision to place Burgin in the dry cell, nor did he supervise Burgin's confinement in that cell.

## V. Discussion

As previously noted, Hoskins argues that he is entitled to judgment as a matter of law on Burgin's excessive force claim because Hoskins' conduct at issue was appropriate to the disturbance created by Plaintiff. Hoskins contends that he is entitled to summary judgment on Burgin's cruel conditions claim because Hoskins had no authority to place Burgin in the dry cell or to modify the conditions of Burgin's confinement to the "dry cell." Hoskins further argues that he is entitled to qualified immunity with regard to Counts I and II, and that he is entitled to official immunity on Count III. The undersigned will discuss these claims in turn.

### A. Excessive Force Claim (Count I)

Section 1983 provides a cause of action for a person who is injured as a result of being deprived of "any rights, privileges, or immunities secured by the Constitution" by a person acting under "color of state law." 42 U.S.C. § 1983.

"The Eighth Amendment bars correctional officers from imposing unnecessary and wanton pain on inmates, regardless of whether there is evidence of any significant injury." *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006) (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Nevertheless, the "Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (internal quotations omitted).

"After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers,* 475 U.S. 312,

319 (1986) (quotation omitted). "The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Id.* "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley:* whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson,* 503 U.S. at 6–7. *See Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010).

Hoskins argues that he is entitled to summary judgment on Burgin's excessive force claim because Burgin was swallowing contraband, Hoskins' use of force was appropriate for the situation, and Burgin received only *de minimis* injuries, if any.

Burgin contends that Hoskins is not entitled to summary judgment because there was no situation existing that required any use of force. Burgin points out that no contraband was found on Burgin to support Hoskins' account of the incident. Burgin argues that the video submitted by Hoskins does not prove that he did not sustain any injuries.

In his Reply, Hoskins contends that whether or not contraband was recovered is irrelevant to the issue of whether Hoskins employed excessive force in his search of Burgin. Hoskins argues that Hoskins' right to approach and search Burgin on suspicion that Burgin had received contraband from another inmate is clear.

The Court disagrees with Hoskins' assertion that whether drugs or other contraband were recovered is irrelevant to the determination of whether excessive force was applied. Hoskins contends that he had the right to conduct a strip search of Burgin based on his suspicion that Burgin had received contraband. Burgin, however, is not challenging Hoskins' right to conduct

7

a strip search. Rather, Burgin contends that Hoskins used excessive force in grabbing him by the throat, throwing him to the ground, sitting on his chest, punching him in the eye, choking him, and spraying pepper spray inside his mouth when he started to scream for help. (Deposition of George Burgin, Doc. 45-1, at 11.) Hoskins admitted that he sprayed Burgin in the face with pepper spray, but contends that he did this to stop Burgin from swallowing drugs. Specifically, Hoskins stated that, during the course of his strip search of Burgin, Burgin "reached down and grabbed something out of his sock and put it in his mouth, and I told him to stop." (Deposition of Bryon Hoskins, Doc. 45-2, at 25.) Hoskins described the item Burgin swallowed as a "little bag of what looked like marijuana…a green leafy substance." *Id.* at 28.

An Eighth Amendment claim exists when, "an officer uses pepper spray without warning on an inmate who may have questioned his actions but who otherwise poses no threat." *Treats v. Morgan*, 308 F.3d 868, 873 (citing *Foulk v. Charrier*, 262 F.3d 587, 691-92, 702 (8th Cir. 2001)). Because Hoskins' sole justification for the use of pepper spray was Hoskins' belief that Burgin had swallowed a bag containing drugs, it is relevant that no drugs or any other contraband were found on x-ray or were ever recovered during Burgin's ten day stay in the dry cell. Hoskins testified that Burgin's cell was searched after the incident, and a prison staff member collected and searched Burgin's feces after each bowel movement during his stay in the dry cell. (Doc. 45-2 at 33-35.) If Burgin's account of the events is true and Burgin did not possess drugs or other contraband posing a threat to Burgin, Hoskins' actions in assaulting Burgin and spraying him in the face with pepper spray were not taken in a good-faith effort to maintain or restore discipline. Instead, Hoskins' actions could be found to be "sadistic and malicious." *Cowans v. Wyrick*, 862 F.2d 697, 699-700 (8th Cir. 1988).

Hoskins also contends that Burgin has not established that he was injured as a result of the alleged excessive force incident. Hoskins argues that the video footage of Burgin in the dry cell shows Burgin's "benign condition," and that Burgin does not assert that the video is inaccurate. (Doc. 50 at 2.) It is true that the video does not reveal any obvious injuries. It is unknown, however, how long after the use of force incident the video was filmed. As pointed out by both parties, there are no video cameras in the bathroom where the use of force incident occurred. In addition, although Hoskins admits in his statement of facts that Burgin complained of lingering pain from the pepper spray and that a nurse allowed him to wash his face as a result, there is no documentation of this in the medical records provided. In fact, there is no reference at all in the medical records provided by Hoskins to the fact that Burgin was sprayed in the face with pepper spray. Similarly, there are no institutional records documenting the use of force incident in the record, other than the administrative grievance records provided by Burgin. Regardless of the dearth of evidence in this case, whether the Eighth Amendment was violated turns on whether force was applied "maliciously and sadistically. . .to cause harm. . .whether or not significant injury is evident." *Hudson*, 503 U.S. at 9 (citations omitted).

The Court is required to view the facts in favor of Burgin and to resolve all doubts in Burgin's favor. With this in mind, the Court finds that the facts alleged in Burgin's verified complaint and deposition, and the deposition testimony of Hoskins create an issue of material fact as to whether Hoskins used excessive force during the September 8, 2010 incident.

Hoskins next argues that he is entitled to qualified immunity on Burgin's excessive force claim. Under Eighth Circuit law, "[q]ualified immunity protects government officials performing discretionary functions from liability for damages so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

have known.'" *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The court employs a two-part inquiry "to determine whether a lawsuit against a public official alleging a constitutional violation can proceed in the face of an assertion of qualified immunity." *Serna v. Goodno*, 567 F.3d 944, 951 (8th Cir. 2009). Courts are to "consider whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right." *Id.* at 951-52 (citation omitted). Further, courts ask whether the right was clearly established. *Id.* at 952. "Unless the answer to both of these questions is yes, the defendants are entitled to qualified immunity." *Krout*, 583 F.3d at 564.

The Court has found that genuine issues of material fact exist as to whether Hoskins applied excessive force maliciously and sadistically on September 8, 2010. The law is well-established that a malicious and sadistic use of force by a prison official against a prisoner, done with the intent to injure and causing actual injury, is enough to establish a violation of the Eighth Amendment's cruel and unusual punishment clause. *See Hudson*, 503 U.S. at 9-10. Thus, Hoskins is not entitled to qualified immunity on Burgin's excessive force claim and Hoskins' Motion for Summary Judgment will be denied as to this claim.

**B.      Cruel Conditions Claim (Count II)**

Burgin contends that Hoskins, in falsely claiming that Burgin had swallowed drugs, maliciously and sadistically caused Burgin's placement in a dry cell for ten days, where he was shackled and bound, and subjected to the indignity of having his bowel movements searched.

"The Eighth Amendment prohibits punishments that deprive inmates of the minimal civilized measure of life's necessities." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). In order to support an Eighth Amendment violation, a prisoner must prove the existence of

10

objectively harsh conditions of confinement, together with a subjectively culpable state of mind by prison officials in condoning or creating the conditions. *Choate v. Lockhart*, 7 F.3d 1370, 1373 (8th Cir. 1993).

Hoskins argues that he is entitled to judgment on Burgin's cruel conditions claim because Hoskins had no authority over the conditions of Burgin's confinement in the "dry cell," nor did he have authority to order Burgin to be confined in the dry cell at all.

Burgin acknowledges that Hoskins was not directly involved in the decision to place Burgin in the dry cell, yet contends that his placement in the dry cell was the direct result of Hoskins' unlawful actions. Burgin contends that, if Hoskins had not initiated the contact with Burgin and brought the false drug allegations against him, then no use of the dry cell would have been considered by the prison administrator.

"Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006).

Hoskins testified that a dry cell is "an empty cell without a toilet." (Doc. 42-2 at 31.) A mattress is brought in at night, from 10:00p.m until 6:00 a.m. *Id.* at 32. When the inmate has to use the restroom, a "porta-potty" is brought into the cell. *Id.* The purpose of the dry cell is to allow prison staff to retrieve contraband from the inmate's bowel movements. *Id.* at 31. Even though Hoskins did not directly place him in the dry cell or oversee his confinement in the dry cell, Hoskins had to know that his allegation that Burgin had swallowed drugs would lead to his confinement in the dry cell. If Burgin had in fact swallowed drugs, his confinement to the dry cell for ten days would be reasonable. In this case, the Court has found that a genuine issue of material fact exists as to whether Hoskins applied excessive force maliciously and sadistically on September 8, 2010. It is undisputed that it was Hoskins' actions that caused Burgin to spend ten

days in the dry cell. Thus, a genuine issue of material fact exists as to whether Hoskins violated Burgin's Eighth Amendment rights by causing his confinement in the dry cell for ten days.

The Court further finds that Hoskins is not entitled to qualified immunity as to this claim because a genuine issue of material fact exits as to whether Hoskins violated Burgin's Eighth Amendment rights, and the law concerning impermissible conditions of confinement is clearly established. *See Rhodes v. Chapman,* 452 U.S. 337, 347 (1981).

## C. State Law Assault and Battery Claim (Count III)

Burgin alleges that Hoskins' actions in throwing Burgin to the ground and beating, choking, and pepper spraying him without need or provocation was done maliciously and sadistically to cause harm and constituted the tort of assault and battery under Missouri law.

Hoskins contends that he is entitled to official immunity on Burgin's state law assault and battery claim because he was acting in his official capacity and within the scope of his authority as a member of the search team at SECC. Hoskins argues that he was executing a search on an offender who he believed to be in possession of dangerous contraband and acted in front of two other officers with identical missions.

Burgin argues that Hoskins is not entitled to official immunity because he acted in bad faith or with malice. Burgin points out that, although Hoskins claims that he acted in front of two other officers, Hoskins has not submitted any evidence from those two officers to support his account and refute Burgin's allegations.

"Under Missouri law, the official immunity doctrine protects public officials from liability for injuries arising out of their discretionary acts or omissions, but not from liability in claims arising from their performance of ministerial acts." *Reasonover v. St. Louis Cnty., Mo.*, 447 F.3d 569, 585 (8th Cir. 2006) (cited case omitted). Official immunity does not apply,

however, to discretionary acts done in bad faith or with malice. *Id.*; *Twiehaus v. Adolf*, 706 S.W.2d 443, 446 (Mo. 1986) (en banc). "The relevant definition of bad faith or malice in this context ordinarily contains a requirement of actual intent to cause injury." *Twiehaus*, 706 S.W.2d at 447. An allegation of "malicious motive or purpose or of conscious wrongdoing" is sufficient under Missouri law to preclude application of the official immunity doctrine. *See id.*

In this case, Burgin alleges that Hoskins acted maliciously in committing the intentional torts of assault and battery based on his actions of throwing Burgin to the ground and beating, choking, and pepper spraying him without need or provocation. These allegations describe a conscious abuse of official duty and power which fall within the scope of malice or bad faith. Under these circumstances, whether official immunity applies is a question of fact which must be considered by the jury. *See Blue v. Harrah's North Kansas City, LLC*, 170 S.W.3d 466, 479-80 (Mo. Ct. App. 2005) (summary judgment inappropriate where facts created a genuine dispute about whether officer acted in bad faith or with malice in making arrest, thereby precluding him from claiming official immunity, and issue was for jury). Hoskins' Motion for Summary Judgment on Burgin's state law claims on the basis of official immunity will therefore be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **denied.**

**IT IS FURTHER ORDERED** that this matter will be set for trial after a telephone conference with the parties is held on a date to be determined.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of December, 2015.